## A98A0689. BALDWIN COUNTY HOSPITAL AUTHORITY v. TRAWICK.
(504 SE2d 708)

POPE, Presiding Judge.

Plaintiff Sharon Trawick sued defendant Baldwin County Hospital Authority d/b/a Oconee Regional Medical Center ("Oconee") for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, injury to her peace and happiness and punitive damages after Oconee's personnel reported to the Baldwin County Department of Family & Children Services ("DFACS") that Trawick's four-year-old daughter, Che'nal, had tested positive for drugs during a drug screen given to her at Oconee. Oconee answered Trawick's complaint then moved for summary judgment,

claiming that it was immune to liability in the case. The trial court denied the summary judgment motion, but certified the matter for immediate appellate review. We granted Oconee's application for interlocutory review, and upon that review, reverse the denial of Oconee's motion.

Construed most favorably to Trawick, the facts show that in February 1995, Che'nal was suffering from an upper respiratory infection and bronchitis. As treatment, Che'nal's pediatrician prescribed Pediazole and Rondec DM cough medicine. The pediatrician, however, took Che'nal off these prescriptions when Trawick reported that Che'nal had become aggressive and disoriented. A day later, when Che'nal's behavior and disorientation failed to improve, the pediatrician instructed Trawick to take Che'nal to Oconee's emergency room. At the emergency room, Che'nal's urine was tested for drugs. The test came back positive for PCP. Later that day, Che'nal was admitted to Oconee and Oconee's personnel informed DFACS about the drug test results. No one at Oconee, however, ever directly or indirectly accused Trawick of giving PCP to her daughter. The next day, Trawick had Che'nal transferred to another hospital for additional tests, which showed no sign of PCP in Che'nal's system. Thereafter, DFACS closed its file on the matter acknowledging the mistaken diagnosis reached by Oconee's personnel. It is undisputed that the urine test administered to Che'nal by Oconee may have given a false positive reading for PCP due to the cough medicine prescribed to Che'nal.

Pursuant to OCGA § 19-7-5 (c) (1) (B), hospitals and medical personnel who have "reasonable cause to believe that a child has been abused shall report or cause reports of that abuse to be made to [DFACS]. . . ." Reports of this type are to be made orally, by telephone or other means, as soon as possible, and the failure to make such reports may result in criminal prosecution. OCGA § 19-7-5 (e), (h). Additionally, under OCGA § 19-7-5 (f), "[a]ny . . . hospital . . . participating in the making of . . . or causing a report [regarding suspected child abuse] to be made to [DFACS] . . . or to an appropriate police authority . . . shall in so doing be immune from any civil or criminal liability that might otherwise be incurred or imposed, provided such participation . . . is made in good faith."

In its motion for summary judgment, Oconee contended that it acted in good faith when it reported the results of Che'nal's urine test to DFACS, and thus, that Oconee was entitled to immunity from Trawick's suit under OCGA § 19-7-5 (f). In support of its contention, Oconee submitted unrefuted affidavit testimony demonstrating that at the time Che'nal was brought to the emergency room, she was not singled out for treatment any different than that received by other similarly situated patients, and only was given a drug test because of

her disorientation. Oconee further demonstrated that it had used drug tests like the one given to Che'nal hundreds of times over the past several years, and on such occasions had received fast and reliable data. Additionally, Oconee presented unrefuted evidence that on the day in question all proper controls had been run on the instrument used to make the analysis of Che'nal's urine, and that the results of the drug screen of Che'nal's urine only were reported to DFACS for purposes of protecting Che'nal, in accordance with Oconee's protocol, which clearly was based on the requirements of law.

In spite of the above evidence, and her own acknowledgment that she knew of nothing indicating any attempt on the part of Oconee or its personnel to harm her in the way they handled the drug screen of Che'nal's urine, Trawick contends that the issue of whether Oconee acted in good or bad faith remains one for a jury due to the apparent failure of Oconee's personnel to take into consideration any negative effect the prescription medicine Che'nal previously had taken, which was listed on her admission sheet, might have had on the results of her urine test before formulating any professional opinion regarding those results, and based on that opinion, reporting the results to DFACS. We cannot agree.

" 'Bad faith' is the opposite of 'good faith,' generally implying or involving actual or constructive fraud; or a design to mislead or deceive another; or a neglect or refusal to fulfill some duty, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. 'Bad faith' is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." (Citations and punctuation omitted.) *Michaels v. Gordon*, 211 Ga. App. 470, 473 (2) (b) (439 SE2d 722) (1993). Standing alone, the failure of Oconee's personnel to take into consideration the effect Che'nal's prescription medicine might have had on the results of her urine test at most constitutes evidence that Oconee was negligent or guilty of exercising bad judgment in forming its professional opinion that Che'nal might be the subject of child abuse. "However, . . . [evidence] of mere negligence or bad judgment is not [equivalent to evidence of a] refus[al] to fulfill [a] professional dut[y], out of some interested or sinister motive, [nor is it equivalent to evidence of a conscious act based on] some dishonest or improper purpose." Id. Consequently, in the case at bar, there simply is no competent evidence of bad faith on Oconee's part. Absent such evidence, the trial court was warranted in granting Oconee's motion for summary judgment based on the good faith immunity provision found in OCGA § 19-7-5 (f).

*Judgment reversed. Beasley and Ruffin, JJ., concur.*

DECIDED JUNE 17, 1998 —
RECONSIDERATION DENIED JULY 21, 1998.

*Jones, Cork & Miller, C. Ashley Royal, Wendell K. Howell,* for appellant.

*Adams & Jordan, Donald J. Jordan,* for appellee.